## ROBERT C. TIPTON *v.* STATE OF MARYLAND

[No. 105, Initial Term, 1967.]

558

*Decided August 1, 1967.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and RUSSELL, J., Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Ferdinand P. Mack* for appellant.

*Alfred J. O'Ferrall, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Richard J. Kinlein, State's Attorney for Howard County,* on the brief, for appellee.

RUSSELL, J., delivered the opinion of the Court.

Robert C. Tipton was indicted by the Grand Jury of Charles County for the murder of Carroll A. Johnson, Jr. and for carrying a concealed deadly weapon. The case was removed to Howard County for trial where a jury found the Appellant guilty of manslaughter and of carrying a concealed weapon on April 1, 1966. On April 22, 1966, the Appellant was sentenced to ten years in the Maryland Penitentiary for the manslaughter conviction and two years for the deadly weapon conviction, the sentences to be served concurrently.

On October 29, 1965, the Appellant and his 19-year old son, Robert W. (Butch) Tipton, drove to pick up two other Tipton boys from the school bus stop on Route 6. Butch had suffered a serious injury several years before which resulted in both of his arms being amputated, up to and including the shoulder blades; he was not wearing artificial limbs at the time of this occurrence. The Appellant stopped his car behind and to the right of the bus. When the door was opened,

Preston Tipton, who was 15 years old, weighed 105 pounds, and was 5 feet 3 inches tall, came tumbling off the bus and rolled down an incline. He was followed by the deceased, Carroll A. Johnson, Jr., who was 16 years old, weighed 180 pounds, and was 6 feet tall, and appeared to be a grown man between 25 and 30 years of age. The deceased began beating and kicking Preston at the bottom of the incline. Butch, who was armless, 19 years old weighed 96½ pounds, and was 5 feet 5 inches tall, got out of the car. The deceased walked up to him and said, "What are you going to do about it?" Butch, who was wearing loose-fitting loafers so he could slip them off and use his toes as fingers, kicked the deceased in the leg, and the deceased hit Butch numerous times about the head, neck, shoulders, and near the groin, and hit him in the chest with a rock. The Appellant, after seeing that Butch had been knocked down, reached under the seat for his gun, which he carried because his job as a bartender necessitated his carrying large sums of money. The deceased then knocked down Herbert Tipton, who was 18 years old, weighed 120 pounds, and was 5 feet 7 inches tall. Johnson started toward Preston, then stopped and picked up a rock. Butch was standing closest to the deceased, and as Johnson cocked his arm to throw the rock, the Appellant shot him in the head, and he later died of the wound. The Appellant testified that he had no time to employ any other means to stop the deceased from throwing the rock. The Appellant also stated that he shot Johnson in order to prevent one of his children "from being killed or maimed for life."

The Appellant's first allegation is that the evidence presented showed that even if Butch Tipton was the aggressor in his affray with the deceased, that Butch Tipton's kicks at the deceased's legs were not calculated to do bodily harm to the deceased. The Appellant reasons further that when Carroll Johnson attacked in a manner to do serious bodily harm or to kill Butch Tipton, the Appellant reasonably believed that the deceased's counterattack was designed to do serious bodily harm or kill Butch Tipton, then the Appellant, as Butch's father, had the right to use sufficient force to overcome Johnson's attack, and to use deadly force if reasonably necessary.

In order to justify an assault on the basis of self-defense, the accused must have had reasonable grounds to believe, and have in fact believed, himself to be in apparent imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant. The trier of facts must determine whether the accused was justified in meeting force with force. If justification is found to have existed, the force used against the assailant must not have been unreasonable or excessive; i.e., the defender must not have used more force than the exigency reasonably demanded. *Guerriero v. State,* 213 Md. 545 at 549 (1957). A third person, closely related to or associated with one attacked in such a manner that he could properly have defended himself by the use of force, has a right to go to the defense of the person attacked and to use the same degree and character of force that the one attacked could have used. *Guerriero v. State,* supra.

The Appellant does not contest the basic law of self-defense in Maryland, but asserts that if the jury should find that Butch Tipton was the aggressor, and that Carroll Johnson, the deceased, used excessive and unreasonable force to repel the attack of Butch Tipton, then Butch Tipton became the defender. As Butch could not retreat to a place of safety, he was then entitled to use sufficient force to overcome the attack of Johnson, who was now the aggressor. The Appellant, as the father of the defender, had the right to use the same degree of force necessary to repel the deceased that Butch had a right to use, and it was for the jury to determine whether the force used by the Appellant was reasonable under the circumstances. The Appellant requested advisory instructions containing these contentions and asserts that the trial court was in error in refusing to submit the instructions to the jury. The requested instructions read as follows:

"DEFENDANT'S REQUEST FOR JURY INSTRUCTION NO. 23

"One who is the aggressor in the sense that he is provoked to conflict by an attack not likely or calculated to cause death or great bodily harm does not thereby forfeit the right to claim self-defense if the

person with whom he is fighting raised the encounter to a new plane of violence by resorting to, or preparing to resort to, force which is likely to cause death or serious bodily injury. Even such an aggressor may kill if it reasonably appears necessary to do so in order to save his life or protect himself from grave bodily harm. So also one who goes to the defense of a relative who is in danger of serious bodily harm from another may kill in defense of that relative provided he reasonably believes that it is necessary to do so in order to protect the relative from serious bodily harm, even though the relative was the aggressor in the conflict, if at no time during the encounter that relative had resorted to force calculated or likely to seriously injure the person with whom he was fighting.

"DEFENDANT'S REQUEST FOR JURY INSTRUCTION NO. 28

"If a person starts or joins in an unlawful fight or exchange of blows, with no thought of causing death or great bodily harm, his fault in doing so is entirely overshadowed if the other wilfully changes it to a deadly encounter. Hence, he has not forfeited entirely his privilege of self-defense. If he kills without availing himself of an obvious safe retreat, he is guilty of manslaughter. If he retreats as far as he can in reasonable safety, he may use deadly force, if this reasonably seems necessary to save himself from death or great bodily harm. And if by reason of the suddenness and fierceness of the change in the nature of the contest, there is no reasonable opportunity to retreat, he may resort to deadly force where he is."

It is incumbent upon the court, when requested in a criminal case, to give an advisory instruction on every essential question or point of law supported by evidence. *Bruce v. State,* 218 Md. 87 at 97 (1958). The above instructions requested by the Appellant obviously concerned a point of law essential to the Appellant's case.

The court's instructions as given to the jury were carefully

drawn and exceptionally lucid but, contrary to the requested instructions, contained the following:

> "As to the defense of self-defense, the law also requires that the defendant prove by the greater weight of the evidence, that he was not the aggressor and did not provoke the conflict. We instruct you, however, that when a person kills in the defense of another person, such a killing is not made unjustifiable or inexcusable because of the fact that the person he defended provoked a conflict, or was the aggressor, provided that the person acting to defend the other person did not know, and under the circumstances had no reasonable grounds to believe that the person he was defending was at fault for being the aggressor or provoking the conflict. On the other hand, if he knew, or as a reasonable person should have known under the circumstances that the person whom he was acting to defend was the aggressor and had provoked a conflict, then his killing in defense of that person would not be justifiable or excusable."

Although there is no authority in Maryland on the exact issue of law embodied in the requested instructions, we think reason and logic would support the proposition that where one attacks another in a manner not calculated to kill or to do serious bodily harm, and the defender counterattacks, using excessive and unreasonable force in a manner reasonably calculated to cause death or great bodily harm, then the original attacker becomes the defender. If the original assailant is unable to retreat to a place of safety or there is no place of safety available, then he may use whatever force necessary to repel the counterattack of the original defender. See Warren on *Homicide*, Section 152, Page 697; Hochheimer's *Criminal Law*, Section 259, Page 292; *Rowe v. U. S.*, 164 U. S. 546 (1896). As stated before, a third person, who is clearly related to or associated with the person subjected to the excessive and unreasonable force of the counterattack, has a right to go to the defense of that person and to use the same degree and character of force that the person presently being attacked could have used to defend himself.

In view of our ruling on the first contention, it is not necessary that we consider the other issues raised by the Appellant.

*Judgments reversed and the cases
are remanded for new trials.*