## BRUCE KRAFT *v.* STATE OF MARYLAND

[No. 748, September Term, 1972.]

*Decided June 11, 1973.*

170

The cause was argued before ORTH, C. J., and MOYLAN and MENCHINE, JJ.

*Neal P. Myerberg* for appellant.

*James G. Klair, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *John D. Bailey, State's Attorney for St. Mary's County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

Whatever the fate of the directly marihuana-related charges themselves, collateral effects are nonetheless evident in other sustainable convictions arising out of the bizarre behavior most certainly induced by marihuana's poisonous fumes. Bruce Kraft, the appellant at bar, 23 years of age, was convicted by a jury in the Circuit Court for St. Mary's County, Judge Joseph D. Weiner presiding, of indecent exposure, possession of controlled paraphernalia and resisting arrest.

The entire course of conduct of the appellant and his liberated young companions on the early evening of May 31, 1972, was bizarre, at least according to the moral and legal code still prevailing in this commonwealth. Walter Lewis Higgs lived with his family in the small community of Compton in rural St. Mary's County. His dining room looked out upon the rear of Rex's Store and the parking lot immediately adjacent to Rex's Store. Between 6:30 and 7 p.m. on May 31, Mr. and Mrs. Higgs and their children were seated at the dinner table for the evening meal. Their dinner was abruptly interrupted when a Ford van pulled onto the parking lot immediately before the Higgs's dining room window. Two completely naked men alighted from the van

and walked nonchalantly into the store. Two teenage girls, clothed, followed them into the store. Mrs. Higgs ran to telephone the Sheriff. Mr. Higgs ran to this front door. The reaction of the children was not testified to. In the meantime, the owner of the store, astonished at two customers approaching him *en naturel,* forwent a sale and screamed at them, "Get out of here." The .foursome reentered the car and drove off, with Mr. Higgs hollering at them from his front porch.

Mr. Higgs, who had known the appellant for approximately four years, identified him as one of the two nude males. A defense witness, Miss Lisa Stevens, a former girlfriend of the appellant, testified that she was with the appellant throughout the late afternoon and early evening. She corroborated Mr. Higgs's testimony that the appellant had gone into Rex's Store, in the nude, to make a purchase. The appellant, himself, took the stand and admitted that he had gone into the store, in the nude, and left immediately when the proprietor shouted to him to "Get out." The appellant's conviction under Article 27, Section 122, which proscribes, in pertinent part, acting "in a disorderly manner . . . by indecently exposing his person on or about any public place," was proper. *Matter of Nawrocki,* 15 Md. App. 252, 259. Cf. *Messina v. State,* 212 Md. 602, and *Kirkorian v. State,* 233 Md. 324.

The appellant's conviction, on the other hand, on the charge of unlawfully possessing controlled paraphernalia was not proper. The implement, the possession of which was the gravamen of this count, was a pipe. It was not of the regular tobacco-smoking variety. It was made of metal fittings, of a type commonly used in the production of aircraft. The testimony of an experienced police officer, well-familiar with the ways of the marihuana-smoking subculture, was that this type of pipe was frequently used for the smoking of marihuana but rarely, if ever, used for the smoking of tobacco. There were, moreover, traces of marihuana found in the bowl of the pipe. There was, furthermore, a strong odor of marihuana permeating the Ford van whence the pipe

was recovered. Notwithstanding the pipe's undoubted suitability for the administration of marihuana, it does not fall under the proscribed umbrella of Article 27, Section 287(d). Paragraphs (ii) and (iii) of Sub-section (d) refer to items and substances typically used in the packaging and cutting, respectively, of contraband drugs. The class of controlled paraphernalia relating to the use of drugs, as distinguished from the packaging or cutting of drugs, is set out in paragraph (i) of Sub-section (d). It expressly limits its definition to "a hypodermic syringe, needle, or other instrument or implement or combination thereof adapted for the administration of controlled dangerous substances *by hypodermic injections* . . ." A pipe, adapted for marihuana-smoking, is thus beyond the pale of Article 27, Section 287. The conviction upon this count must be reversed.

The remaining conviction before us for review is that of resisting arrest. As to the "resisting" aspect of the offense, there is no question as to the legal sufficiency of the evidence.

When Deputy Sheriff Raymond Williams announced to the appellant that he was under arrest, Deputy Williams, following his routine arrest procedure, further informed the appellant that he would have to place handcuffs upon him. The appellant asserted that "he wasn't going to be handcuffed." A struggle ensued. The appellant was described by the arresting officers as "extremely hostile and foul." The officers stated that the appellant "called us every animal that ever walked the face of the earth, threatened us, and so forth." The appellant was described as appearing to be "either under the influence of alcohol or narcotics." The officers, however, did not smell any alcohol. The appellant was further described as "just wild and fighting, belligerent and screaming. Not just shouting to one another like across the room, but out and out screaming. As I said, every other word was a four-letter word." Deputy Williams had to use mace to subdue the appellant. He ultimately placed him over the hood of one of the police vehicles and then handcuffed him.

The appellant relies, rather, upon the legal proposition that if one is subjected to an unlawful arrest, he may use any reasonable means, including force, to resist that arrest and to effect his escape. That is the current state of the law. *Williams v. State*, 204 Md. 55, said at 64:

> "We agree with the general proposition advanced by appellants that a peace officer may not arrest for a misdemeanor not committed in his presence, and also that one illegally arrested may use any reasonable means, even force, to effect his escape. *Sugarman v. State*, 173 Md. 52, 57."

See also *Jones v. State*, 4 Md. App. 616, 621. But see *Soles v. State*, 16 Md. App. 656, n. 8. We must, therefore, look to see whether the arrest of the appellant was or was not lawful.

Following the abruptly aborted visit of the appellant and his companions to Rex's Store, a radio alert went out to all patrol cars in the area, giving the description of the appellant and his automobile and indicating that the appellant was wanted for "an indecent exposure which occurred at Rex's Store." Deputy Ron Clarke was on routine patrol on Route 5 just south of Leonardtown when he heard the broadcast. As he proceeded toward the Compton area, he spotted the suspect vehicle and ordered it to the side of the road. The appellant's position is that this stop was unlawful, since Deputy Clarke was erroneously attempting to make an arrest for a misdemeanor which had not been committed in his presence. The appellant ignores Article $66\frac{1}{2}$, Section 3-409(a), and Article $66\frac{1}{2}$, Section 6-112, which give a policeman the absolute right to stop a motorist and to demand the production of a registration card and a driver's license, respectively. The presence of additional motivation in the stopping officer does not erode this fundamental authority. Deputy Clarke, moreover, testified that when he first approached the stopped vehicle, he asked the driver for his driver's license and for the automobile's registration card. As Deputy Clarke stood next to the vehicle on a public road, he "was in a position where he had every right to be." *Taylor v. State*, 9 Md. App. 402, 406.

From that constitutionally sound vantage point, Deputy Clarke observed data which gave him probable cause to arrest the appellant, and his companions, for the possession of marihuana. Officer Clarke observed in open view the pipe hereinbefore described. It was sitting immediately in front of Miss Stevens, who was seated in the middle of the front seat. The appellant was to her right. The pipe was resting on "an engine mount," in a forward position where the dashboard would be in a passenger automobile. Deputy Clarke established his expertise in the *modus operandi* and the paraphernalia of marihuana-smokers. He testified that he had seen pipes of this sort on many occasions and that he associated them exclusively with the use of marihuana. Deputy Clarke detected the strong smell of marihuana coming from the interior of the stopped vehicle. Deputy Clarke was a graduate of the Bureau of Narcotics and Dangerous Drugs School in Washington, D.C. He had been "involved in several hundred narcotics arrests of which a hundred or better have involved the use of marihuana of which some have been arrests due to the smell of marihuana." He had, further, burned marihuana at least several times a month at P.T.A.'s and civic organizations before whom he gave talks. Adding to the probable cause was the unusual behavior of the appellant and his companions some minutes before at Rex's Store, which had been communicated to Deputy Clarke by radio and which gave some suggestion at least that the occupants of the car were under some sort of intoxication. When Deputy Clarke asked for the pipe, Miss Stevens immediately grabbed it and threw it to the rear of the vehicle, an action indicating that the pipe was not deemed to be totally innocuous by the occupants of the car. Miss Stevens then leaped into the rear of the car, jumped from the back of the vehicle and ran into the woods, where another deputy hauled her down some 150 yards away. The total accumulation of data gave Deputy Clarke probable cause to believe that the occupants of the car had been and were then smoking marihuana and were, therefore, guilty of possession of marihuana. The legal

predicate of a lawful arrest having been established, the act of "resisting" escalated to a case of "resisting arrest."

*Judgments affirmed as to counts charging disorderly conduct by indecent exposure and resisting arrest; judgment reversed as to count charging possession of controlled paraphernalia.*