STATE OF CONNECTICUT *v.* MEYER BILLER
(2073)

SPALLONE, DALY and BIELUCH, Js.

Argued October 11—decision released December 17, 1985

*M. Mitchell Morse,* for the appellant (defendant).

*Christopher Malany,* special deputy assistant state's attorney, with whom, on the brief, were *John Waddock* and *Carl Schuman,* assistant state's attorneys, for the appellee (state).

BIELUCH, J. This appeal arises out of the defendant's conviction, after a jury trial, on a charge of interfering with an officer in violation of General Statutes § 53a-167a. The defendant has raised eight claims of error with regard to his conviction. We find no error.

The jury could reasonably have found the following facts. On March 12, 1981, a fire took place at a house owned by Wilken Shaw located at 79 Hallock Street in New Haven. At the scene of the fire, Joseph Toscano, an arson control assistant inspector assigned to the office of the New Haven State's Attorney, saw the defendant approach Shaw and his daughter-in-law, Willa Shaw. Toscano watched as the defendant spoke to the Shaws and provided them with some documents which Wilken Shaw signed. Toscano then approached the defendant and the Shaws with another officer, Joseph Howard. As the officers approached the trio, they heard the defendant state to the Shaws that he would contact the insurance companies.

Toscano identified himself to the defendant who responded by acknowledging that he knew Toscano's identity. Toscano then asked the defendant if he was licensed to act as a public adjuster in this state. Toscano also, at that time, saw the documents which Shaw had signed. He believed that one of those documents was a retainer for the services of a public adjuster. Because he knew that the defendant no longer was licensed as a public adjuster, Toscano ordered the defendant's arrest for violating General Statutes § 38-71, which prohibits acting as a public adjuster without a license.

At some time during these events,[1] the defendant tore up certain documents which Shaw had signed and placed the pieces in his pocket. After the arrest,

---

[1] Because the specific timing of this event is important and is not sufficiently established, we cannot clarify this sequence of events any further. In view of our holding, such further clarification is unnecessary.

Howard handcuffed the defendant. When the officers attempted to search his pockets, however, the defendant resisted this effort and struggled to prevent them from doing so. The officers then led the defendant to a police car. There, the police succeeded in entering the defendant's pockets and retrieving the remnants of the torn documents.

The defendant was charged with violation of General Statutes § 38-71, acting as a public adjuster without a license, and of General Statutes § 53a-182, disorderly conduct. By substitute information, the second count was changed to interfering with a police officer in violation of General Statutes § 53a-167a.[2] The defendant pleaded not guilty to both counts of the substituted information and, after a trial, the jury was unable to agree on a verdict on the first count and a mistrial was declared as to that count. The jury, however, found the defendant guilty on the second count.

## I

The defendant's first three claims of error are: (1) that the court erred in denying his motion to dismiss the substituted information against him based upon his claim that his original arrest had been illegal; (2) that the court improperly restricted the evidentiary hearing on the motion to dismiss so as to prevent the defendant from presenting evidence which would have demonstrated that the police originally lacked probable cause to arrest him; and (3) that because they were acting illegally, the police were not in the performance of their duties as required by General Statutes § 53a-167a. We find these claims to be without merit.

At the outset, we note that the defendant does not appeal from the mistrial declared on the first count of

---

[2] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

the information lodged against him. Only the charge upon which he was convicted and sentenced is at issue here. Since we conclude that the illegality of the defendant's initial arrest is not, per se, a defense to the charge of interfering with an officer, these claims of error must fail.

In *State* v. *Privitera,* 1 Conn. App. 709, 476 A.2d 605 (1984), this court held that "the legality of the police officer's conduct is not an element of the crime defined by General Statutes § 53a-167a (a), and that, in a prosecution under that statute, to the extent that the state's case is based on the conduct of a police officer in making an arrest, by virtue of General Statutes § 53a-23 the illegality of that arrest is not a defense [to that charge]." Id., 719. But even more so here, the defendant's conviction pursuant to the same statute as in *Privitera* bears no fundamental relationship to the legality of his initial arrest. Rather, it is his conduct after arrest which supported this charge and is at issue.

Our holding by no means renders any and all police misconduct irrelevant. A violation of General Statutes § 53a-167a only occurs when interference with the officer is "in the performance of his duties." "If [the officer] is acting under a good faith belief that he is carrying out that duty, and if his actions are reasonably designed to that end, he is acting in the performance of his duties." *State* v. *Privitera,* supra, 722. Thus, the question is not whether there was probable cause for the defendant's original arrest, or whether that arrest was otherwise illegal. The test is whether the officer is acting in good faith within the scope of his duties as an officer or is pursuing a personal intent or frolic of his own. Id. Thus, in the present case, the lack of probable cause to arrest the defendant on the original charges was irrelevant to the court's jurisdiction over his prosecution for violation of § 53a-167a, and his motion to dismiss this charge was properly denied.

Similarly, the court's failure, at the hearing on the motion to dismiss the information, to admit further evidence on the issue of the officers' probable cause to arrest the defendant cannot be found to be improper, since such evidence was irrelevant to the court's jurisdiction over the charge now on appeal.

## II

The defendant next claims that his actions in preventing the police from searching his pockets immediately after his arrest did not amount to a material interference with the performance of the duties of those officers. We disagree.

The defendant's argument is, essentially, that by his actions, he merely delayed the officers' search of his pockets until he was away from the public spotlight at the scene of the fire. That, he argues, does not constitute interference with the performance of the officers' duties, but merely with the timing thereof. We see no meaningful distinction in this case. The defendant's argument seems to be that unless he successfully prevented the police from obtaining the torn documents from his pockets, he merely attempted to interfere with the police, at best. General Statutes § 53a-167a, however, defines "interfering" to include obstruction, resistance, hindrance or endangerment. To "obstruct" is defined as "to be or come in the way of: hinder from passing, action, or operation." To "resist" is defined as "to withstand the force or the effect of: be able to repel or ward off." To "hinder" is defined as "to make slow or difficult the course or progress of." "Endangerment" is defined as "the act of placing in danger or the state of being placed in danger." Webster, Third New International Dictionary. At the very least, the delay caused to the officers in this case was sufficient to raise a jury question regarding whether there had been an interference in violation of General Statutes § 53a-167a.

## III

The defendant next claims that the court erred in its charge to the jury. He claims that the court erred in four respects in charging the jury on the elements of General Statutes § 53a-167a and in referring to General Statutes § 53a-23, which abrogates the common law right to resist an illegal arrest. We have carefully reviewed the defendant's exceptions to the charge and we conclude that they are without merit. "In considering a charge, critical dissection is not required. The charge as a whole must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict." *State* v. *Taxiltaridis,* 2 Conn. App. 617, 620, 481 A.2d 98 (1984). The test must be whether "the court's instructions, taken as a whole, fairly and adequately presented the case in such a way that injustice was not done to either party under the established rules of law." Id. We conclude that the defendant's claims are based on a narrow reading of brief excerpts from the charge which are taken out of context and do not do justice to the parties. In this manner, the defendant incorrectly characterizes as error the court's proper and complete guidance of the jury to its verdict.

## IV

The defendant next claims that the court erred in permitting the prosecutor to argue, in his closing remarks to the jury, facts which were not in evidence. This claim is made despite the defendant's failure to object to those remarks at trial[3] and despite his own prior statement

[3] Counsel asserts that any such objection would have been futile and that he was, therefore, not obligated to object. *Grant* v. *Pagter,* 133 Conn. 646, 649, 53 A.2d 380 (1947); *Tracy* v. *O'Neill,* 103 Conn. 693, 699, 131 A. 417 (1925). He further asserts that because this error rises to the level of a violation of constitutional rights, the failure to object should be excused pursuant to *State* v. *Evans,* 165 Conn. 61, 71, 327 A.2d 576 (1973). Because we find no colorable claim, as alleged, of violation of a fundamental constitutional right, we need not consider *Evans* further.

to the jury which was to the same effect as that to which he now objects. The factual argument which the defendant raises by this issue was the prosecutor's comment that the defendant "tore up the documents *when the police officers wanted them.*" (Emphasis added.) This statement was made by the prosecutor in paraphrase of a written statement in evidence which Wilken Shaw had given to a private investigator for the defendant. That written statement was that "the men wanted the form he had, but, he tore it up rather than give it to them." We conclude that the prosecutor's comment was an accurate and unobjectionable paraphrasing of the original written statement given by Wilken Shaw to the defendant's investigator. His rephrasing of the evidence was proper summation or argument to the jury.

V

The defendant's penultimate claim is that the trial court erred in ruling, in response to the defendant's motion in limine, that his prior conviction on two counts of falsely certifying as to the administration of an oath, a violation of General Statutes § 53-368, could be admitted into evidence for the purpose of impeaching the defendant's testimony if he chose to testify. This claim is based on the fact that these convictions were the subject of an appeal at the time when the trial court ruled on the defendant's motion.[4] We conclude that the trial court did not err here.

The trial court, in its discretion, may admit evidence of a prior conviction for impeachment purposes despite the pendency of an appeal. *State* v. *Schroff,* 3 Conn. App. 684, 689, 492 A.2d 190 (1985). The court must, however, also permit defense counsel to point out the

---

[4] We note at the outset that this motion was repeated at the close of the defendant's case and was then denied a second time. The record indicates that it was only at the time of this second motion that the appeal was disclosed to the court.

pending appeal to the jury. Id. Thus, in the present case, it was not error to deny the defendant's motion in limine.

The defendant has also argued that the use of the convictions then on appeal as a factor in his sentencing was improper. In addition to our conclusion above, that the use of those convictions for impeachment was proper, we hold that their use in sentencing was also proper. The trial court has broad discretion in sentencing and in the absence of an abuse of that discretion, we will not reverse the sentence imposed. *State* v. *Rose,* 168 Conn. 623, 638, 362 A.2d 813 (1975). In the present case, the trial court only acknowledged that the "[t]wo felony convictions in the past even though they are on appeal, must be considered." We cannot conclude that the trial court's use of those convictions in sentencing was an abuse of discretion.

## VI

Finally, the defendant claims that the court erred in denying his motion to strike the testimony of Wilken Shaw after the state failed to produce a recorded statement given by Shaw to the police. The state produced a transcript of the recorded statement, asserting that the recording itself had been erased in accord with New Haven police department policy. The defense, however, claimed that this was insufficient compliance with Practice Book §§ 748 through 755. Thus, the defense moved, pursuant to § 755, that the testimony of Shaw be stricken or that, in the alternative, a mistrial be declared. The court denied that motion. In this we also find no error.

Whether sanctions should be imposed for nondisclosure in a given case, such as the present one, requires the weighing of the state's culpability in failing to produce the statement against the amount of prejudice incurred by the defendant due to the loss of

the statement. *State* v. *Myers*, 193 Conn. 457, 467, 479 A.2d 199 (1984); *State* v. *Shaw*, 185 Conn. 372, 386, 441 A.2d 561 (1981), cert. denied, 454 U.S. 1155, 102 S. Ct. 1027, 71 L. Ed. 2d 312 (1982); *State* v. *Zayas*, 3 Conn. App. 289, 295–96, 489 A.2d 380 (1985). We must agree with the court in *State* v. *Myers,* supra, which concluded that the erasure of the recording by the police, in circumstances similar to those in the present case, was unexcused. Id., 469. We also note, however, that the court in *Myers* found that the prejudice to the defendant arising from the erasure did not warrant a reversal of the conviction, and we reach the same conclusion here.

A transcript of Shaw's recorded testimony, signed by him, was offered to the defense in lieu of the recording itself. The defense claimed that this transcript was insufficient and moved for permission to conduct a voir dire examination of Howard who had already testified and who had recorded the statement from Shaw. The trial court denied that motion but encouraged the defendant to cross-examine Shaw regarding whether the transcript accurately reflected the recorded statement he had previously given. The court further ordered the state to make available to the defendant the person who had transcribed the statement from the recording. The defense did not avail itself of either of these opportunities. Under these circumstances, we cannot conclude that the court erred in denying the defendant's motion to strike Shaw's testimony. Granting such a motion "would be a heavy sanction to the government for loss of a piece of evidence on which there was other primary evidence." *State* v. *Shaw,* supra, 386, citing *United States* v. *Miranda,* 526 F.2d 1319, 1324 (2d Cir. 1975), cert. denied, 429 U.S. 821, 97 S. Ct. 69, 50 L. Ed. 2d 82 (1976).

There is no error.

In this opinion the other judges concurred.