594 A.2d 1224

Andrew GLOVER

v.

STATE of Maryland.

No. 1664, Sept. Term, 1990.

Court of Special Appeals of Maryland.

Sept. 6, 1991.

Bradford C. Peabody, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Tarra Deshields–Minnis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Hugh Carter Vinson, Former State's Atty. for Dorchester County, Cambridge, on the brief), for appellee.

Argued before MOYLAN, WENNER and MOTZ, JJ.

MOTZ, Judge.

Appellant, Andrew Glover, was convicted by a jury in the Circuit Court for Dorchester County (Johnson, J.) of battery and hindering a police officer. He was sentenced to concurrent four year terms of imprisonment, with two years suspended, and three years probation upon release. On appeal, appellant's sole contention is that the trial court erred in refusing to instruct the jury on the law of fresh pursuit. For the reasons stated below, we affirm.

### Facts

On January 26, 1990, Katherine Glover, appellant's mother, drove up to uniformed Hurlock, Maryland Police Officer John Williams, as he was walking to his marked patrol car after stopping another driver for a traffic violation in Hurlock. Ms. Glover challenged Officer Williams to a race, saying "Let's race, dammit." She then "took off very fast" near some pedestrians and sped away.

Officer Williams returned to his patrol car and followed Ms. Glover's car, with his emergency lights on. He followed her about a mile out of town (and out of his jurisdiction) to an open field where she had stopped and gotten out of her car near a crowd of people including appellant and other relatives. (Ms. Glover and her family members apparently often gathered in this field, which she testified, had "belonged to her ancestors," to drink and socialize.) Officer Williams stopped his car about twenty yards behind Ms. Glover and asked her to come over to him with her driver's license and registration.

Appellant then walked toward Officer Williams; the officer told appellant to stop. The officer again requested Ms. Glover to come over; appellant continued to walk toward the officer and "bumped" into the officer "with his [appellant's] chest." Officer Williams told appellant to "get away," but appellant responded by saying, "What are you going to do about it," and then once again bumped Officer Williams with his chest, causing the officer's hat to fall to the ground. Officer Williams then attempted to arrest appellant for "hindering" him. A struggle ensued [1] and appellant punched the officer and gouged him in the eye. Others in the crowd attacked the officer and tore his clothing. The struggle finally stopped when Officer Williams pointed his gun at appellant; appellant and some

---

1. Although appellant testified that the physical struggle only ensued after the officer "pushed" him, in light of the jury's decision to convict appellant of battery, it is clear that the jury rejected his claim of self defense.

of his friends then ran away. Appellant was arrested later that day; his mother was arrested and convicted of traffic violations.

Although conceding they did not check any timepiece, appellant, his mother, and his two aunts all testified that Officer Williams did not arrive at the open field until "eight to ten minutes" after Ms. Glover arrived. Appellant further testified that he knew that Officer Williams was out of the officer's jurisdiction and appellant was concerned as to why the officer wanted to talk to his mother. Officer Williams testified that he started his pursuit within fifteen seconds after Ms. Glover sped away from him, was never more than a "quarter of a mile" behind her, and lost sight of her only once as she drove out of town.

### Fresh Pursuit—the Statute

Appellant bases his entire case on the dispute as to the timing of the pursuit. He claims that the time lag of eight to ten minutes showed that Officer Williams was no longer in fresh pursuit when he arrived at the field. Thus, appellant argues that the officer, out of his jurisdiction and not in fresh pursuit, illegally accosted Ms. Glover, which permitted appellant to resist an unlawful stop of his mother and an unlawful arrest of himself.

At trial, appellant requested "as an instruction the language under" Md.Ann.Code art. 27, § 599 (1957, 1987 Repl. Vol.) "where fresh pursuit is defined." That statutory definition of fresh pursuit, however, applies only in the context of interstate pursuits and is a part of the subtitle pertaining solely to the authority of officers of other states to make arrests in Maryland. Thus, the requested instruction was not appropriate here. The court below, recognizing this, refused to give the instruction because it "would do nothing more than confuse the jury." Appellant objected to the trial court's refusal to give an instruction to the jury "on fresh pursuit and an instruction on jurisdiction of a police officer or authority of a police officer ... outside of his jurisdiction." Although unmentioned by appellant at

trial, there is a companion Maryland statute governing *intrastate* fresh pursuit. Md.Ann.Code art. 27, § 602A(a)(2) (1957, 1987 Repl.Vol.).

### Adequacy of the Request for a
### Fresh Pursuit Instruction

Appellant now concedes that requesting the instruction under Section 599 was inappropriate, but contends that this flaw in the proposed instruction was not a sufficient reason for the trial court to refuse to give any instruction at all on a relevant legal issue in the case. The State maintains that the requested instruction was inaccurate and potentially misleading and so the trial court's refusal to give it was not error. Thus our initial inquiry is whether the request made by the defendant here triggered an obligation by the circuit court to give a fresh pursuit instruction, assuming such an instruction would have been relevant.

█ Where a requested jury instruction is "potentially misleading" *Hunt v. State,* 321 Md. 387, 405, 583 A.2d 218, 226 (1990), *cert. pet. filed,* No. 90–8164 (May 1, 1991), or "inaccurate" *Collins v. State,* 318 Md. 269, 290, 568 A.2d 1, 11, *cert. denied,* — U.S. ——, 110 S.Ct. 3296, 111 L.Ed.2d 805 (1990), a defendant has no right to it and a trial judge's refusal to grant it is not error. On the other hand, where a request for a jury instruction is "technically erroneous," the trial court should include "a correct instruction in his charge" and failure to do so is error. *Privette v. State,* 320 Md. 738, 748, 580 A.2d 188, 192 (1990); *Noel v. State,* 202 Md. 247, 252, 96 A.2d 7, 10 (1953) (*dicta*). *See also Clark v. State,* 80 Md.App. 405, 411–15, 564 A.2d 90, 94 (1989); *Gooch v. State,* 34 Md.App. 331, 337, 367 A.2d 90, 94 (1976).

On its face, the difference between a jury instruction which is "potentially misleading" and one which is "technically erroneous" is not crystal clear. Our review of the above cited cases, however, suggests that upon examination of their facts and the requested jury instructions, a worka-

ble principle emerges as to when refusal to modify an erroneous instruction is error.

In *Hunt*, the defendant requested an instruction that he "would" serve 20 years in prison for a handgun violation "in addition to" the life sentence the jury might impose for the murder conviction. 321 Md. at 404, 583 A.2d at 226. The Court of Appeals rightly concluded that such an instruction was fundamentally misleading because while consecutive sentences could extend the defendant's mandatory minimum sentence, concurrent sentences would not. *Id.* at 405, 583 A.2d at 226. Only the trial judge could determine if the sentences were concurrent or consecutive and that would not be done until the defendant had an opportunity to present an allocution. *Id.* Thus there was no way that the trial judge could have modified the proposed instruction to eliminate its inherently misleading quality. Similarly, in *Collins v. State*, 318 Md. at 289, 568 A.2d at 11, the fundamental premise of the requested instruction, *i.e.*, "sentence of life imprisonment presumptively means that the prisoner will spend the remainder of his natural life in prison" was directly contrary to Md.Ann.Code art. 27, § 413A (1957, 1987 Repl.Vol.) which provides that "judge[s] may not instruct the jury that the jury must assume that sentence for life imprisonment is for the natural life of the defendant." Because that premise could not be "cured" by any revision by the trial judge, his refusal to give the requested instruction was not error.

In contrast, in *Privette v. State*, 320 Md. at 746, 580 A.2d at 191, the gist of the instruction requested by the defendant was legitimate, *i.e.*, the Motor Vehicle Administration (MVA) arguably had a statutory duty to notify a driver of a lapse in his insurance and instruct him to surrender his license. The actual language of the instruction requested on this point was "a mish-mash of garbled verbiage, more apt to confuse than to inform." *Id.* at 747, 580 A.2d at 192. But because it nonetheless raised an arguable defense, the trial judge's refusal to modify the requested instruction and give an accurate, clear instruction on the MVA's statutory

duty was error. *Id.* Similarly, in *Clark v. State,* 80 Md. App. at 411, 564 A.2d at 93 the defendant "timely requested an instruction on the consequences of a verdict of not criminally responsible," an admittedly proper area of instruction. Although the language of the instruction sought contained some misstatements, we held that the circuit court's failure to instruct the jury on criminal responsibility was error because this was relevant, *i.e.,* "a proper subject for instructions." 80 Md.App. at 412, 564 A.2d at 94.

 Therefore, we believe that the following principle emerges from the case law. If the premise of the instruction requested by defendant is relevant and sanctioned by law, rather than one contrary to it, a circuit court has an obligation to instruct on the point even if the language of the instruction offered by the defendant is in some respects erroneous. The premise here—the doctrine of fresh pursuit—is clearly a relevant defense sanctioned by law, rather than one contrary to it. Accordingly, even though an instruction based on the exact language "under" art. 27, § 599 was erroneous, the circuit court had an ·obligation to instruct correctly on the doctrine of fresh pursuit (*i.e.,* pursuant to art. 27, § 602A(a)(2)) if the issue was supported by the evidence, thereby making it relevant. *See Chaplin v. Cruikshanks,* 2 H. & J. 215, 216 (1808); *Mason v. State,* 12 Md.App. 655, 661, 280 A.2d 753, 758 (1971).

### Relevancy of the Requested Instruction

Our next inquiry, therefore, is whether the fresh pursuit doctrine is a relevant issue in this case. If, as a matter of law, the officer was acting in fresh pursuit *or,* even if he was not acting in fresh pursuit, appellant's conduct was not justified then the fresh pursuit doctrine is irrelevant and there was no need for a jury instruction as to it.

(1)

 The common law doctrine of fresh pursuit allows a police officer to pursue and arrest a person outside of the officer's geographic jurisdiction, without a warrant, for

misdemeanors committed in his presence *within a reasonable time* thereafter. *Gattus v. State*, 204 Md. 589, 600–01, 105 A.2d 661, 666 (1954) (emphasis added). This common law doctrine has been codified in many states, including Maryland. Md.Ann.Code art. 27, § 602A(a)(2), which defines intrastate fresh pursuit, specifically provides that pursuit must be "continuous and without unreasonable delay, but does not require instant pursuit." Even assuming that Officer Williams did not arrive at the field until ten minutes after his pursuit began, arguably this evidence is insufficient, as a matter of law, to support a claim that he failed to act in fresh pursuit, *i.e.,* 1) continuously and 2) without unreasonable delay. *See Poss v. State*, 167 Ga. App. 86, 305 S.E.2d 884, 887 (1983) (no error not to give requested instruction on fresh pursuit because, as a matter of law, officers were within jurisdictional authority.)

It seems clear that the maximum possible ten minute time lag here cannot be construed as an "unreasonable delay." Generally, there is no specific rule as to what constitutes such a delay; rather, reasonableness must be determined under the particular circumstances of each case. *Swain v. State*, 50 Md.App. 29, 39–40, 435 A.2d 805, 810 (1981) (interpreting similar language in Uniform Act on Fresh Pursuit concerning interstate fresh pursuit). Our research, however, has failed to uncover any case, in any jurisdiction, where a similar time period was found to constitute an "unreasonable delay." Rather, in numerous cases where time lapses of similar duration, or even longer were considered, courts have held, as a matter of law, that the officer was acting in fresh pursuit. *See e.g., United States v. Getz*, 381 F.Supp. 43, 46 (E.D.Pa.1974) *aff'd* 510 F.2d 971 (3d Cir.), *cert. denied*, 421 U.S. 950, 95 S.Ct. 1684, 44 L.Ed.2d 105 (1975) (35 minutes); *Reyes v. Slayton*, 331 F.Supp. 325, 327 (W.D.Va.1971) (15–20 minutes); *Duenez v. State*, 735 S.W.2d 563, 565–66 (Tex.Ct.App.1987) (17 minutes); *Six Feathers v. State*, 611 P.2d 857, 861 (Wyo.1980) (41 minutes); *Charnes v. Arnold*, 198 Colo. 362, 600 P.2d 64, 66 (1979) (*en banc* ) (10–15 minutes); *People v. Clark*, 46

Ill.App.3d 240, 4 Ill.Dec. 785, 788, 360 N.E.2d 1160, 1163 (1977) (17 minutes).

Whether, as a matter of law, the "continuous" pursuit requirement was met here is more problematic. The rationale for this requirement is that if police cease their pursuit, the policy permitting extra jurisdictional arrest (to permit apprehension which would be impossible if other authorities had to be notified) vanishes. *Swain v. State,* 50 Md.App. at 39–40, 435 A.2d at 810. Thus, although an officer need not engage in a bumper to bumper, "fender-smashing Hollywood style chase," *United States v. Getz,* 381 F.Supp. at 46; *Charnes v. Arnold,* 600 P.2d at 66, if he interrupts his pursuit for a sufficient length of time to allow him a reasonable opportunity to obtain a warrant or notify other authorities, he should do so. *See People v. Escudero,* 23 Cal.3d 800, 153 Cal.Rptr. 825, 831, 592 P.2d 312, 318 (1979). Arguably, ten minutes simply did not provide Officer Williams with a reasonable amount of time to notify other authorities or obtain a warrant and so, even assuming there was this time lag, his pursuit was "continuous" as a matter of law. *Compare People v. Lott,* 197 Colo. 78, 589 P.2d 945, 947 (1979) (*en banc*) (three hour lapse found not to be sufficiently continuous because officers had time to obtain arrest warrant or enlist assistance of authorized officers before arresting). There is, however, very little authority on this issue. Accordingly, and because its resolution is unnecessary in light of our holding below, we do not reach this question here.

### (2)

■ Appellant contends that if Officer Williams was not acting in fresh pursuit, he "illegally accosted" [2] Ms. Glover.

---

**2.** We have held that there is no right to resist an "illegal stop." *Barnhard v. State,* 86 Md.App. 518, 528, 587 A.2d 561, 566 *cert. granted,* 323 Md. 115, 591 A.2d 506 (1991). We noted that the question of "whether the initial detention was an arrest or a stop was a question for the jury to decide." 86 Md.App. at 526–527, 587 A.2d at 565. This question was not put to the jury here. In light of that and

For this reason, appellant claims he was authorized to resist an illegal stop of his mother and an illegal arrest of himself, unless the officer was acting in fresh pursuit. Accordingly, he asserts a fresh pursuit instruction was necessary. We hold that regardless of whether the officer acted in fresh pursuit, appellant's conduct was not justified. Accordingly, no fresh pursuit instruction was necessary and the trial court's failure to give such an instruction was not error.

In support of his claim, appellant relies on *Kraft v. State,* 18 Md.App. 169, 173, 305 A.2d 489, 491 (1973) which holds "if one is subjected to an unlawful arrest, he may use any reasonable means, including force, to resist that arrest and to effect his escape," and *Tipton v. State,* 1 Md.App. 556, 562, 232 A.2d 289, 292 (1967) which holds that a third person may go to the defense of another. He ignores the fact that even where the use of force is authorized, the force used may only be that which is reasonably demanded by the situation. *Guerriero v. State,* 213 Md. 545, 549, 132 A.2d 466, 468 (1956); *Jones v. State,* 4 Md.App. 616, 621–22, 244 A.2d 459, 462 (1968). An intervenor, acting under a right to assist, is judged "on his own conduct, based upon his own observation of the circumstances as they reasonably appeared to him." *Alexander v. State,* 52 Md.App. 171, 183, 447 A.2d 880, 887, *aff'd.* 294 Md. 600, 451 A.2d 664 (1982). Thus, appellant could not legally use more force than was reasonably demanded by the circumstances he faced. *Tipton v. State,* 1 Md.App. at 560, 232 A.2d at 291.

When appellant came to the aid of his mother, Officer Williams had merely requested her license and registration. Not only were there no words of arrest, Officer Williams had not even acted to detain Ms. Glover. Moreover, it is undisputed that absolutely no form of physical force or coercion was ever used by Officer Williams against Ms. Glover. It was this factual circumstance that appellant

---

appellant's companion claim that *his* arrest was illegal, in examining this issue, we assume that Ms. Glover was subjected to an illegal *arrest.*

faced. Under these facts, no use of force against Officer Williams was reasonable, much less acts constituting battery.

 Nor was appellant's hindering of the officer justified even if the underlying arrest was illegal. The crux of appellant's claim to the contrary is the argument that the officer, if making an illegal arrest, was not performing a duty.[3] There is no Maryland law directly on point. It is clear, however, that a police "duty" sufficient to trigger a hindering charge need not be an arrest. *Id.* at 405, n. 2, 466 A.2d at 1280, n. 1; *Busch v. State,* 289 Md. 669, 677, 426 A.2d 954, 958 (1987). Moreover, in *Sibiga v. State,* 65 Md.App. 69, 76, 499 A.2d 484, 487–88 (1985) we upheld a hindering conviction even though the defendant claimed that he had not hindered the police in the performance of any lawful duty. Sibiga obstructed and hindered police officers who, acting pursuant to a writ of possession, sought to evict him from his home. *Id.* Because the effect of the writ had been stayed by the circuit court, Sibiga claimed it gave the officers "no legal right to move him from his house" and thus his resistance could not be hindering. *Id.* Although we did not elaborate on the extent of police officers' "duty" we concluded that there was "ample evidence" that the police were "engaged in the performance of a duty" in executing this writ. *See also Rodgers v. State,* 280 Md. 406, 421, 373 A.2d 944, *cert. denied,* 434 U.S. 928, 98 S.Ct. 412, 54 L.Ed.2d 287 (1977) (conviction for resisting arrest upheld even though arrest warrant defective).

---

**3.** The elements of the common law offense of obstructing or hindering a police officer are:

(1) A police officer engaged in the performance of a duty;

(2) An act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty;

(3) Knowledge by the accused of facts comprising element (1); and

(4) Intent to obstruct or hinder the officer by the act or omission constituting element (2).

*Cover v. State,* 297 Md. 398, 413, 466 A.2d 1276, 1284 (1983).

In *United States v. Heliczer*, 373 F.2d 241 (2nd Cir.), *cert. denied*, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967) the court held that defendants violated 18 U.S.C. § 111, when they resisted arrest by federal agents or assisted another resisting arrest even though the arrest itself was illegal. Section 111 prohibits resistance, opposition, or interference with federal agents while an agent is "engaging in ... the performance of his official duties." *Id.* at 243 n. 1. The defendants in *Heliczer*, like appellant here, argued that "if the arrest was unlawful, the agents were not engaged in performing their official duties" and so there was no violation of the statute. *Id.* at 245. The Second Circuit soundly rejected this theory, reasoning:

> [A]ppellant assumes that the scope of the agents' official duties is co-extensive with their power to arrest. But this is not so.... "Engaged in * * * performance of official duties" is simply acting within the scope of what the agent is employed to do. The test is whether the agent is acting within that compass or is engaging in a personal frolic of his own. It cannot be said that an agent who has made an arrest loses his official capacity if the arrest is subsequently adjudged to be unlawful.

*Id.* *Accord State v. Hatton*, 116 Ariz. 142, 568 P.2d 1040, 1046 (1977) (*en banc*).

In *State v. Biller*, 5 Conn.App. 616, 501 A.2d 1218 (1985), *certif. denied*, 199 Conn. 803, 506 A.2d 146, *cert. denied*, 478 U.S. 1005, 106 S.Ct. 3296, 92 L.Ed.2d 711 (1986) the court considered the precise question presented here, *i.e.*, whether a police officer is performing an official duty, sufficient to support a hindering charge, when making an illegal arrest.[4] The *Biller* court held that he was, reasoning that an officer is acting "in the performance of his duties"

---

4. The *Biller* court was interpreting a Connecticut hindering statute which provided that:
 > A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman *in the performance of his duties.*

 Conn.Gen.Statutes 53a–167a(a) (emphasis added).

if he is "acting under a good faith belief that he is carrying out that duty, and if his actions are reasonably designed to that end." *Id.* 501 A.2d at 1220. "[T]he test is whether the officer is acting in good faith within the scope of his duties as an officer or is pursuing a personal intent or frolic of his own." *Id.* at 1221. *See also State v. Pembaur,* 9 Ohio St.3d 136, 459 N.E.2d 217, *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984) ("absent bad faith on the part of a law enforcement officer, an occupant of business premises cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances."); *State v. Mulvihill,* 57 N.J. 151, 270 A.2d 277, 280 (1970) (an officer is "acting in the course of his duty, even though the arrest is illegal.").

█ When the rationale of these cases is applied here, it is clear that Officer Williams was at all times acting in the performance of an official duty. He did not stop or arrest Ms. Glover on his own "personal frolic." *Heliczer,* 373 F.2d at 245. Rather, the officer was clearly "acting under a good faith belief" (*Biller,* 501 A.2d at 1220; *Pembaur,* 459 N.E.2d at 217) that he had the authority to pursue Ms. Glover. Moreover, he used no "unreasonable or unnecessary force." *Mulvihill,* 270 A.2d at 280. Accordingly, regardless of whether the officer acted in fresh pursuit, the officer was performing an official duty and appellant was not justified in hindering him.

The conclusion we reach here with regard to unjustified reaction to an (arguably) unlawful arrest is entirely consistent with the modern trend in the case law. Many jurisdictions have totally abrogated the common law rule which permits a citizen to resist an illegal arrest of himself. *See e.g., Commonwealth v. French,* 396 Pa.Super. 436, 578 A.2d 1292, 1297–98 (1990).[5] These courts note that in

---

5. The following twelve states have reached this conclusion by judicial decision: *Miller v. State,* 462 P.2d 421, 427 (Alaska 1969); *State v. Hatton,* 116 Ariz. 142, 568 P.2d 1040, 1046 (1977); *State v. Richardson,* 95 Idaho 446, 511 P.2d 263, 268 (1973), *cert. denied,* 414 U.S. 1163, 94

today's society, there are safeguards—immediate arraignment, reasonable bail, appointment of counsel, prompt probable cause determination, the exclusionary rule, and the right to a speedy trial—which were nonexistent when [6] the rule was originated. *See e.g., State v. Thomas*, 262 N.W.2d 607, 611 (Iowa 1978). They further reason, "[i]f resistance to an arrest or a search made under the color of law is allowed, violence is not only invited but can be expected." *See e.g., State v. Hatton*, 568 P.2d at 1045–46; *State v. Koonce*, 89 N.J.Super. 169, 214 A.2d 428, 434 (1965). Although Maryland still follows the old common law rule, *Sugarman v. State*, 173 Md. 52, 57, 195 A. 324, 326 (1937), Maryland courts have criticized, *Rodgers v. State*, 280 Md. at 421, 373 A.2d at 952 and refused to expand it. *Id.; Barnhard v. State*, 86 Md.App. at 528, 587 A.2d 561.

Moreover, no Maryland court has sanctioned the right of a third person to aid another in resisting arrest and the cases holding that a third person may come to the defense

---

S.Ct. 928, 39 L.Ed.2d 117 (1974); *State v. Thomas*, 262 N.W.2d 607, 610–11 (Iowa 1978); *State v. Austin*, 381 A.2d 652, 655 (Me.1978); *In re Welfare of Burns*, 284 N.W.2d 359, 360 (Minn.1979); *State v. Nunes*, 546 S.W.2d 759, 762 (Mo.Ct.App.1977); *State v. Koonce*, 89 N.J.Super. 169, 214 A.2d 428, 436 (1965); *State v. Doe*, 92 N.M. 109, 583 P.2d 473 *aff'd in part, rev'd in part*, 92 N.M. 100, 583 P.2d 464, 467 (1978); *City of Columbus v. Fraley*, 41 Ohio St.2d 173, 324 N.E.2d 735, 740, *cert. denied*, 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975); *State v. Peters*, 141 Vt. 341, 450 A.2d 332, 335 (1982); *State v. Westlund*, 13 Wash.App. 460, 536 P.2d 20, 25 (1975).

Nineteen states reached the decision through legislative enactment: Ala.Code § 13A–3–28 (1982); Ark.Stat.Ann. § 41–512 (1977); Cal.Penal Code § 834a (Deering 1971); Colo.Rev.Stat. § 18–8–103(2) (1978); Conn.Gen.Stat, § 53a–23 (1981); Del.Code Ann. tit. 11, § 464(d) (1979); Fla.Stat. § 776.051(1) (1989); Ill.Ann.Stat. ch. 38, § 7–7 (Smith–Hurd 1972); Iowa Code § 804.12 (1980) (common law holding codified); Mont.Code Ann. § 45–3–108 (1981); Neb.Rev.Stat. § 28–1409(2) (1979); N.H.Rev.Stat.Ann. § 594:5 (1974); N.Y.Penal Law § 35.27 (McKinney 1975); Or.Rev.Stat. § 161.260 (1981); 18 Pa.Cons. Stat.Ann. 505(a), (b)(1)(i) (Purdon 1983); R.I.Gen.Laws § 12–7–10 (1981); S.D.Codified Laws Ann. § 22–11–5 (1978); Tex.Penal Code Ann. § 9.31(b)(2), 38.03 (Vernon 1974); Va.Code Ann. § 18.2–460 (1982); *See also* Model Penal Code § 3.04(2)(a)(i) (1974).

6. *The Queen v. Tooley*, (1709), 2 Ld.Raym. 1296, 92 Eng.Rep. 349 (1709).

of another, *e.g. Tipton v. State,* 1 Md.App. 556, 232 A.2d 289, do not involve a police officer. A third party is usually in an even worse position than the arrestee to make an adequate assessment of the initial legality of an arrest. Accordingly, the policy reasons for not permitting him to go to the aid of one arrested illegally are even stronger than those outlined above for refusing to permit the arrestee himself to resist arrest. *Commonwealth v. Superzi,* 235 Pa.Super. 95, 340 A.2d 574, 576 (1975). *Accord State v. Holeman,* 103 Wash.2d 426, 693 P.2d 89, 92 (1985) (*en banc*) (bystanders have only limited knowledge and may let emotions control their judgment). *See also United States v. Vigil,* 431 F.2d 1037, 1042 (10th Cir.1970), *cert. denied,* 401 U.S. 918, 91 S.Ct. 901, 27 L.Ed.2d 820 (1917) (interference by third party expands danger of violence). *City of Louis v. Treece,* 502 S.W.2d 432, 434 (Mo.Ct.App.1973) (same). These reasons are illustrated all too well in this case where what began as a traffic stop of one individual evolved into a mini-riot which necessitated a police officer drawing his weapon.

In sum, we hold that the doctrine of fresh pursuit was not a relevant issue at trial and so the trial judge's failure to give an instruction as to it was not error.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.