**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 09-4516

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RUSSELL L. LEE,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.  Deborah K. Chasanow, District Judge. (8:08-cr-00485-DKC-1)

Argued:  May 13, 2011                    Decided:  May 27, 2011

Before MOTZ, DAVIS, and KEENAN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Benjamin C. Wiles, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant.  Jonathan Biran, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:** John J. Korzen, Director, Megan M. Curran, Student, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant.  Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, Hollis Raphael Weisman, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

At approximately noon on March 3, 2008, Sergeant Daniel Chaale, a law enforcement officer stationed at Andrews Air Force Base, and his partner responded to reports of a verbal altercation inside the Base barber shop. They found Russell Lee standing outside the barber shop in the common area of the Base Exchange. Lee, who matched the description of the man involved in the altercation, was wearing a large black trench coat and was standing with his hands behind his back. Lee approached the officers and admitted to "arguing with an individual . . . inside the barber shop."

Sgt. Chaale ordered Lee to step back and show his hands. Lee, who was angry and belligerent, refused to comply with these orders. Because they were in a confined space inside the Base Exchange, Sgt. Chaale took Lee's arm and directed him to the common smoking area just outside the Base Exchange complex. Once outside, Sgt. Chaale ordered Lee to sit down. By Lee's own admission, he refused. During this encounter, Lee cursed at the officers and continued to refuse to show his hands. Thereafter, based on Lee's lack of cooperation and refusal to show his hands, Sgt. Chaale forcibly detained, searched, and eventually arrested Lee.

Lee was charged with two offenses: (1) "willfully act[ing] in a disorderly manner that disturbs the public peace,"

2

in violation of Md. Code Ann. Crim. Law § 10-201(c)(2); and (2) "willfully fail[ing] to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace," in violation of § 10-201(c)(3). Because the events occurred on a military base within federal jurisdiction, the offenses were adjudicated in federal court.

On October 6, 2008, a federal magistrate judge conducted Lee's bench trial. The Government presented the testimony of Sgt. Chaale. At the close of the Government's case, the magistrate judge acquitted Lee of the first offense, finding that the Government failed to present evidence "to suggest that anybody was disturbed" by Lee's actions. As to the second offense, the magistrate judge first found as fact that Lee failed to obey "two if not three" police orders. The judge then considered whether this confrontation "was a problem that needed to be resolved so as not to lead to a breach of the public peace," and found that "it was reasonable to believe that it would cause a disturbance," and thus found Lee guilty of the second offense. The judge sentenced Lee to six months' probation with conditions that he attend anger management and perform 20 hours of community service.

The magistrate judge advised Lee of his right to appeal the ruling to the district court. On October 17, 2008, proceeding pro se, Lee timely appealed the magistrate judge's

3

order to the district court. Lee challenged Sgt. Chaale's testimony and questioned whether there was any "evidence that the 'Sit down' command was meant to prevent him from inciting or offending others." On November 4, 2008, Lee filed another notice of appeal, which the district court construed as a brief. The Government did not respond until March 20, 2009 -- well after the allotted 30-day period.

On the same day the Government filed its response, the district court entered judgment, affirming the magistrate judge's order in a memorandum opinion. The court concluded that the magistrate judge was not clearly erroneous in finding that the officer's "orders to [Lee] were necessary and reasonable to prevent a disturbance of the public peace." The district court did not enter a separate formal order of judgment.[1] More significantly, the record does not reflect that the district court informed Lee of his right to appeal the judgment to this court within the 10-day appeal period of Federal Rule of Appellate Procedure 4(b). Apparently unaware that the district court entered judgment, on March 24, 2009, Lee filed a reply brief. Thereafter, the district court neither entered a formal

---

[1] Pursuant to the civil rules of procedure, "the result of failure to enter judgment on a separate document is that the time . . . to appeal under Appellate Rule 4(a) . . . does not begin to run." Fed. R. Civ. P. 58 advisory committee's note (discussing 2002 amendments to rule). This so-called "separate document requirement" has no analogue in the criminal rules.

order of judgment nor informed Lee of his right to appeal the judgment.

On May 19, 2009, Lee, still proceeding pro se, noted an appeal outside the applicable 10-day window.[2] This court set an informal briefing schedule, and on September 24, 2009, Lee filed an informal merits brief. The Government opted not to file a response. On August 31, 2010, we appointed Lee counsel and ordered supplemental briefing on the question of whether this court could sua sponte raise the Rule 4(b) time bar. On November 10, 2010, Lee, through appointed counsel, filed a formal merits brief. On December 8, 2010 -- 99 days after we ordered formal briefing and 18 months after Lee noted the appeal -- the Government invoked the Rule 4(b) time bar in a motion to dismiss Lee's appeal. Shortly thereafter, the Government filed its formal appellate brief.

## I.

The time bar in Rule 4(b) is not jurisdictional. See United States v. Urutyan, 564 F.3d 679, 685 (4th Cir. 2009). We note, moreover, that the district court never informed Lee, who was proceeding pro se, of his right to appeal. See Fed. R. Crim. P. 32(j) (providing that district courts "must advise the

---

[2] In 2009, after the commencement of this appeal, Fed. R. App. P. 4(b) was amended to allow 14 days.

defendant of the right to appeal the conviction . . . [and] sentence"); Fed. R. Crim. P. 58(c)(4) (setting forth identical duties in misdemeanor cases); see also Peguero v. United States, 526 U.S. 23, 27 (1999) (instructing that district courts "must be meticulous and precise" in advising criminal defendants of their appeal rights).[3]  Because reaching the merits of Lee's appeal would not waste any judicial resources beyond those already squandered by the Government's lengthy delay, we see no barrier to considering the substance of Lee's appeal.  Cf. Kontrick v. Ryan, 540 U.S. 441, 456 (2004) (explaining that a claim-processing rule can "be forfeited if the party asserting the rule waits too long to raise the point"); Urutyan, 564 F.3d at 684, 686 (reaching the merits of defendant's appeal when government waived the time bar).

Lee contends that the Government presented insufficient evidence to support his conviction.  "In assessing

---

[3] Although the parties did not brief whether the district court's error in failing to advise Lee of his appeal rights was harmless, at oral argument the Government suggested that because Lee timely filed his appeal from the magistrate judge's order, he can be held to have known of his right to appeal.  See Peguero, 526 U.S. at 28 (holding failure to advise was harmless because defendant "had full knowledge of his right to appeal").  Of course, the magistrate judge clearly instructed Lee of his right to appeal to the district court.  Thus, contrary to the Government's suggestion, Lee's timely appeal of the magistrate judge's order serves to "underscore the importance of the advice which comes from the court itself," id. at 27, not to diminish it.

6

the sufficiency of the evidence presented in a bench trial, we must uphold" a judgment of guilt "if, taking the view most favorable to the Government, there is substantial evidence to support the verdict." United States v. Armel, 585 F.3d 182, 184 (4th Cir. 2009) (internal quotation omitted). "'Substantial evidence' means evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. (internal quotation omitted).

Lee relies primarily on the magistrate judge's finding that the Government presented "no testimony to suggest that anybody was disturbed" by Lee's conduct. According to Lee, "because the public was not present during [his] interaction with the police, the orders could not have been given to prevent a disturbance of the public peace." Appellant's Br. at 28. But the magistrate judge's finding involved whether Lee actually disturbed the public peace, not whether there was a public presence such that Lee's conduct posed a threat to the public peace. Relevant to the latter inquiry, the magistrate judge considered the evidence that Lee "was in a public area of the Base Exchange" during lunchtime when he failed to comply with Sgt. Chaale's orders and exchanged "heated words" with the officers. From this evidence, the magistrate judge as fact finder could conclude that "it was reasonable to believe" that

7

Lee's conduct "would cause a public disturbance."  Indeed, in his informal brief to this court, Lee acknowledged that there were "numerous customers . . . coming and going with the mix of active duty personnel outside and inside the [Base Exchange]" during the events in question.  Appellant's Informal Br. at 2.

Lee maintains, however, that there must be evidence of a gathering crowd to satisfy the requirement that the lawful order be made "to prevent a disturbance of the public peace." He relies on Lamb v. Maryland, 786 A.2d 783 (Md. Ct. Spec. App. 2001), in which Maryland's intermediate appellate court reversed a conviction under Md. Code Ann. Crim. Law § 10-201(c)(3) because the defendant actually obeyed the police officer's only lawful order to step back.  The court went on to note that by stepping back the defendant "withdrew from the public sidewalk to his parent's property and that there was no evidence of a gathering crowd during the confrontation."  Id. at 800.  Thus, the Lamb court concluded, "there could be neither a disturbance of the public peace nor an obstruction of the free passage of pedestrians or others in a public place or on a public conveyance pursuant to [Maryland law]."  Id.  Rather than delineating the presence of a gathering crowd as an element of the offense, the Lamb court was merely noting the lack of evidence that the defendant, standing on his parent's private property and not attracting attention, was a threat either to an

8

existing public peace or to the free passage of the public. Here, of course, Lee stood in a public place in the middle of the day where he himself has acknowledged "numerous" members of the public were "coming and going."[4]

## II.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

---

[4] We very much appreciate the fine efforts of Lee's appointed counsel in assisting us in resolving this appeal.